Martin, J. sitting for Harper, J.
delivered the opinion of the Court.
The question involved in this case is so fully discussed in the State v. Cole, 2 M’C. 1, and the authorities there cited, that I can scarcely suppose it necessary to do more, than refer to some of them, and shew their application. The relator in that case, had been fined under the patrol law of 1809, and it was contended, that that act having been repealed by the act of 1819, he could not be punished. Mr. Justice Colcock, in delivering the opinion of the Court, shews very clearly, that the act of 1809, had not been repealed, and therefore, that the defendant was punishable. But in the discussion of the question he uses this very strong language. “It would not be less absurd, to punish a man for an act, which is not illegal at the time the punishment *586 is inflicted, than to punish him for one which never has been declared illegal.” And again, “No doctrine of law is better established, than that where one commits an offence which is made felony by statute, and then the statute be repealed, he cannot be punished as a felon in respect of that statute.” 1 Hawk. P. C. ch. 40, sec. 6. 1 Hale, 291. It is true, that the offence, of which the defendant is alleged to have been guilty, is not felony ; but to obviate this objection, I have only to refer to the same opinion, where it is said, “the doctrine applies as well to the imposing and recovery of penalties, as to the creating and punishment of felonies :” and the reasons assigned, are abundantly satisfactory.
The plaintiff’s counsel have relied on the ground, that as soon as the offence was committed, and 'proceedings were instituted for the recovery of the penalty, a right vested in the plaintiff, which the Legislature could not take away by the act of 1830. I cannot admit the correctness of this proposition. The farthest that the argument can be legitimately extended, would be, that an inchoate, or imperfect, interest commenced. The right itself had not vested, nor do I conceive that it could vest, until the money was received. Up to that time, it was under the control of the law. It is a power delegated by law, as I conceive, to sue for the use of the State, and for himself; and the same authority, which delegated,that power, could revoke it at any time before its final execution.
But this question is not left open to speculation. It has been settled, as 1- conceive, by various adjudications. The act of Congress of 2nd March, 1799, directs the appropriation of all forfeitures incurred by the acts of Congress, when not otherwise disposed of; and particularly controls those incurred under the act of 28th February, 1806, by giving a portion of the penalties for a violation of the latter law to the informers. Under this latter act the schooner General Pinkney and cargo were libelled, and condemned, in the Circuit Court of Maryland; and an appeal was taken to the Supreme Court of the United States. Pending the appeal, the act of Congress under which the vessel and cargo were libelled, aud condemned, expired by its own limitation: and Chief Justice Marshall, in delivering the opinion of the Court, said, “It has been long settled, on general principles, that after the expiration or repeal of a law, no penalty can *587 be enforced, or punishment inflicted, for violations of the law, committed while it was in force, unless some special provision be made for that purpose by the statute.” See' the case of Yeaton and others v. The United States, 5 Cranch, 281.
In the case of The United States v. The Schooner Peggy, 1 Cranch, 104, which was also a question of prize, in which individuals were interested with the United States for the condemnation, after seizure, libel, and condemnation inihe Circuit Court, but pendingmn appeal, the Government entered into a treaty with France, which provided for the restoration of all . vessels and cargoes, not “ definitively condemned and the Supreme Court, Marshall, C. J. delivering the opinion, ordered the vessel to be restored. He placed this question, I think, in its true light, so far as policy is concerned, when he said, “ that in mere private cases between individuals, a Court will and ought to struggle hard against a construction, which will, by a retrospective operation, affect the rights of parties ; but in greát national concerns, where individual rights, acquired by war, are sacrificed for national purposes, the contract making the sacrifice ought to receive a construction conforming to its manifest import.” And when he rested the case on legal principles, he was equally correct in saying, “ In such a case the Court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside.”
In the case just cited, if the General Government had the right to relinquish the interest, which individuals held with it in common, for great national purposes, this State, in passing the law of 1830, had the same power, on the score of policy, for the purposes of the State, to release a penalty, in which an individual had no other interest than arose from a violation of the law, which was repealed.
The very question was decided in the Supreme Court of New Hampshire, under circumstances more favorable to the plaintiff, than those of the case now before us. There the plaintiff had recovered judgment for the penalty under a statute ; but after judgment the statute was repealed, and under their practice, the original defendant brought his action to review the judgment: *588 and it was held, that he was intitled to judgment, upon the Lewie v. Poster, Adams, 61.
In 4 Yeates, 392, the same general principle, that no proceedings can be pursued under a repealed statute, although commenced before the repeal, unless by a special clause in the repealing act, is discussed, and established.
The deduction to be drawn from all these cases, I think is, that the statute, Under which the penalty is sought to be recovered, must be of force at the rendition of the judgment: and if this be the true principle, it follows necessarily, that if there be no law, the Court can render no judgment. And this view is further illustrated by the well established practice, that a declaration for a penalty, given by statute, must conclude “ against the form of the statute 1 Gallison, 26, 2 East, 333: and at the trial the question presented is the existence of such a statute. If there be none, the Court can have no authority for its judgment.
The motion to set aside the nonsuit is refused.